IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BOARD OF TRUSTEES, PLUMBERS AND PIPEFITTERS LOCAL UNION NO. 74 PENSION FUND, *et al.* </br></br> Plaintiffs, </br></br> v. </br></br> JONES LANG LASALLE AMERICAS, INC. </br></br> Defendant. | C.A. No. 20-194-TMH |

## MEMORANDUM OPINION

Timothy J. Snyder, Curtis J. Crowther, YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, DE; Michael DelTergo, JENNINGS SIGMOND, P.C., Philadelphia, PA – Attorneys for Plaintiffs

Todd D. Schiltz, Gregory J. Ossi, Christopher R. Williams, FAEGRE DRINKER BIDDLE & REATH LLP, Wilmington, DE – Attorneys for Defendant

March 28, 2022
Wilmington, DE

**HUGHES, UNITED STATES CIRCUIT JUDGE, SITTING BY DESIGNATION:**

Pending before me are Plaintiffs' and Defendant's motions for summary judgment, requesting I resolve a contract-interpretation dispute as a matter of law. For the reasons set forth below, I deny both motions.

I.   **BACKGROUND**

Plaintiffs—Board of Trustees, Plumbers and Pipefitters Local Union No. 74 Pension Fund and related parties (collectively, the Union)—sued Defendant— Jones Lang LaSalle Americas, Inc.—for failing to pay amounts and contributions allegedly due under contract. D.I. 1, at 7–8. The contracts at issue are collective bargaining agreements between the parties, relating to two facilities.

First, in 2010, employees at a Honeywell facility organized and appointed the Union as their bargaining representative. D.I. 41, at 6. Subsequently, Jones—the manager of the Honeywell facility—and the Union entered into the first of several CBAs. D.I. 37, at 4–5.

Second, in 2011, the Union entered into a CBA with Cushman & Wakefield, the then-manager of a J.P. Morgan Chase facility. *Id.* at 3. In February 2014, Jones alerted the Union that it would soon take over as the manager of the facility, negotiate a new CBA with the Union, and honor most of the terms of the old CBA in the meantime. *Id.* On May 16, 2014, the parties agreed to a new CBA that would run until the original CBA's end date—January 31, 2015. *Id.* And shortly after, the parties agreed to a subsequent CBA that would go into effect on February 1, 2015, and run until January 31, 2019. *Id.*

1

Both parties move for summary judgment on the meaning of the term "hour(s) paid" that appears in these CBAs. D.I. 34; D.I. 35, at 1–2; D.I. 40; D.I. 41, at 1–2. The Honeywell CBAs require Jones to make ERISA and PAC contributions "[f]or each hour paid, or portion of an hour paid." D.I. 35, at 4 (quoting D.I. 36, at 5 (Exhibit 1)); D.I. 37, at 2, 4. The J.P. Morgan Chase CBAs require Jones to "make [ERISA and PAC] contributions . . . in the following amounts per hour for each hour that an employee is paid. All contributions . . . are based on hours paid." D.I. 35, at 6 (quoting D.I. 36, at 118 (Exhibit 5)); D.I. 37, at 2, 4.

The Union's interpretation: Jones pays one overtime hour at the rate of 1.5 regular hours.[1] D.I. 35, at 6. Meaning, every overtime hour worked corresponds to 1.5 "hours paid." *Id.* Therefore, the CBAs require Jones to contribute 1.5 times the base contribution rate for every overtime hour worked. *Id.*

Jones's interpretation: "Hours paid" is meant to cover situations in which an employee is paid despite not working. D.I. 41, at 12. For example, vacation, holiday, and sick time. *Id.* Jones allegedly did not intend "hours paid" to require an additional contribution for overtime hours. D.I. 41, at 22.

## II.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the initial burden of proving the

---

[1] This rate can vary. *See* D.I. 35, at 18 (alleging that overtime pay is either 1.5- or 2-times regular pay). I use 1.5 as a representative example.

2

absence of a genuinely disputed material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"Although construction of collective bargaining agreements is generally governed by federal law, traditional rules of contract construction apply when not inconsistent with federal labor law." *Int'l Union v. Skinner Engine Co.*, 188 F.3d 130, 138 (3d Cir. 1999). One traditional contract principle is that if a contract is unambiguous, it is enforced according to its terms. *McDowell v. Phila. Hous. Auth.*, 423 F.3d 233, 238 (3d Cir. 2005). "Whether [an agreement] is unambiguous is a question of law." *Id.* An agreement is ambiguous if it is "reasonably susceptible to at least two different interpretations," *id.* (quoting *United States v. New Jersey*, 194 F.3d 426, 430 (3d Cir. 1999)), when "consider[ing] the contract language, the meanings suggested by counsel, and the extrinsic evidence offered in support of each interpretation," *Einhorn v. Fleming Foods of Pa., Inc.*, 258 F.3d 192, 194–95 (3d Cir. 2001).

If an agreement is ambiguous, then the court may continue to consider extrinsic evidence to determine its meaning. *McDowell*, 423 F.3d at 238. And if "extrinsic evidence is undisputed, then the interpretation of the contract remains a question of law." *In re Columbia Gas Sys. Inc.*, 50 F.3d 233, 241 (3d Cir. 1995).

### III. DISCUSSION

    A. <u>Summary Judgment</u>

        *i. Ambiguity*

The Union moves for summary judgment, arguing that "hours paid" is ambiguous as a matter of law, but that undisputed facts require the ambiguity to be resolved in its favor on summary judgment. Jones cross-moves for summary judgment, arguing that "hours paid" is unambiguous as a matter of law and requires judgment in its favor.

The Union argues that the "hours paid" provision is ambiguous because both the Union's and Jones's definitions are reasonable interpretations of the term. In asserting that its interpretation is reasonable, the Union points to testimony from one of its representatives that every other party with whom the Union contracts interprets "hours paid" as the Union defines the term. D.I. 35, at 11, 14–15. The Union does not dispute that Jones's interpretation is also reasonable because other unions with whom Jones contracts apply Jones's definition of "hours paid." *Id.* at 11. But nonetheless, the Union asserts that, in this case, undisputed facts demonstrate that the proper interpretation of "hours paid," as referenced in these particular contracts, is the Union's interpretation.

Jones, on the other hand, argues that "hours paid" is unambiguous. D.I. 41, at 12. To support its position, Jones presents several district court opinions and a Sixth Circuit opinion that concluded that the term is unambiguous in the context of other CBAs, *id.* at 12–15; asserts that the structure and negotiation of the Union–Jones

4

CBAs show that the term is unambiguous, *id.* at 15–18; and mentions that when Jones and other unions have intended a greater contribution rate for overtime hours, the resulting CBAs explicitly express that intent, *id.* at 15, which Jones describes as "an exemplar of industry practice," *id.* at 24.

And while the Union initially asserted in its opening brief that "there is no genuine issue of material fact in dispute," D.I. 35, at 21, it has since reversed course, suggesting that summary judgment might not be appropriate because factual disputes arose during summary judgment briefing. D.I. 45, at 26. Specifically, the Union disputes the assertion that Jones's CBAs with other unions are "exemplar[s] of industry practice." D.I. 45, at 8–9 (referencing D.I. 41, at 24).

I agree—the parties dispute material facts that preclude me from deciding this issue on summary judgment. "It is well established that industry or shop practices form part of the collective bargaining agreement." *Connors v. Consolidation Coal Co.*, 866 F.2d 599, 603 (3d Cir. 1989) (citing *United Steelworkers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581–82 (1960)). If Jones can show that its definition of "hours paid" is the industry standard, then "hours paid" might not be "reasonably susceptible to at least two different interpretations" and would therefore be unambiguous. But Jones and the Union proffer evidence—in the form of CBAs that they have with other parties and testimony as to how the parties administer those CBAs—that point in opposite directions. This competing evidence creates genuine issues of material fact regarding whether an industry practice exists and, if so, what that industry practice

5

is. Therefore, I deny the Union's and Jones's motions for summary judgment as to whether the term "hours paid" is ambiguous.

### ii.  *Interpretation*

The Union moves for summary judgment, advocating for its interpretation of "hours paid." Jones similarly cross-moves for summary judgment.

Because I deny summary judgment on whether "hours paid" is ambiguous, there is no need to interpret the term's meaning at this time. Even if I determined that "hours paid" were ambiguous, I would still deny summary judgment for reasons similar to those I discuss above. Here, the parties more heavily dispute what constitutes industry practice. *See* D.I. 35, at 14–15 ("In its interpretation of the 'hours paid' language, [Jones] literally stands alone among the employers who adhere to the industry practice when contributing to the Plaintiff Funds."); D.I. 41, at 21–22 ("A far more compelling portrait of 'industrial common law' for the term 'hours paid' is evident in JLL's collective bargaining agreements with other labor unions."). Therefore, I deny the Union's and Jones's motions for summary judgment as to what the term "hours paid" means.

### B.  Partial Summary Judgment

In the alternative, the Union moves for partial summary judgment on two separate grounds.

### i.  *Actual Knowledge*

The Union argues that Jones must adhere to the Union's definition of "hours paid" for the J.P. Morgan Chase CBAs because Jones actually knew, or at least had

6

reason to know, how the Union interpreted and applied the term before it entered into the contracts. Under Third Circuit law, "it is a central principle of contract interpretation that if a party knew or had reason to know of the other parties' interpretation of terms of a contract, the first party should be bound by that interpretation." *Bohler-Uddenholm Am., Inc. v. Ellwood Grp.*, 247 F.3d 79, 99 (3d Cir. 2001). The Union alleges that Jones was twice told—before taking over as manager of the facility—that the Union interprets "hours paid" to require an additional contribution for overtime hours. D.I. 35, at 18 (citing D.I. 36, at 126 (Exhibit 7), 128 (Exhibit 8)).

Jones counters that *the Union* knew or had reason to know how *Jones* interprets the term because, since 2011, Jones had never made additional contributions based on overtime hours under the Honeywell CBAs. D.I. 47, at 9; D.I. 41, at 19.

The Union implies that I can reach this issue even if I deny summary judgment as to ambiguity. *See* D.I. 45, at 17 ("[A]s it pertains to the [J.P. Morgan Chase] CBA, there are additional facts that effectively make the 'unambiguous/ambiguous' debate a moot point."). But in *Bohler-Uddenholm*, the case on which the Union largely relies, the Third Circuit first affirmed that the disputed phrase was ambiguous as a matter of law before analyzing whether one party had actual knowledge of the other party's interpretation. 247 F.3d at 99–100. And the Union even quotes a case that explains that this actual-knowledge rule was developed "to deal with such latent ambiguities." D.I. 35, at 17 (quoting *Mayer v. Dev. Corp. of Am.*, 541 F. Supp. 828, 852 (D.N.J.

7

1981)). "If the written contract is unambiguous, the Parol Evidence Rule . . . bar[s] the use of extrinsic evidence for interpretation." *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.*, 619 F.2d 1001, 1010 n.9 (3d Cir. 1980).

Above, I denied summary judgment as to whether the term "hours paid" is ambiguous, meaning I cannot yet determine if extrinsic evidence can be used to interpret the term. Therefore, I deny the Union's motion for partial summary judgment as to whether Jones is bound by the Union's interpretation of "hours paid" for the J.P. Morgan Chase CBAs.

### ii. Contract Assumption

The Union asserts that Jones assumed the 2011 J.P. Morgan Chase CBA and is therefore "estopped from unilaterally altering any [of its] terms . . . that it did not otherwise disclaim." D.I. 45, at 18. The Union argues that "[t]here is also no dispute that . . . [Cushman & Wakefield] remitted contributions based on the 'hours paid' provision" as the Union defines the term. *Id.* at 19. Although "[w]hether the new employer has manifested an intent to be bound by the old CBA" is usually a factual question, the Union argues that Jones "readily admits that it agreed to honor the terms of the [Cushman & Wakefield] Agreement." D.I. 35, at 20 (citing D.I. 36, at 123 (Exhibit 6)).

Jones argues that it never assumed the 2011 J.P. Morgan Chase CBA because it had disclaimed successorship. D.I. 47, at 9–10. And it alleges that the Union skipped a step in its legal analysis of whether Jones is a contractual successor or a labor-law successor to the 2011 J.P. Morgan Chase CBA. *Id.* at 9. Jones alternatively

8

argues that the 2011 J.P. Morgan Chase CBA had no legal effect because the CBA specified that it would terminate when Cushman & Wakefield stopped working at the facility. *Id.* at 10.

The parties dispute material facts as to whether Jones intended to be bound by all the terms in the original CBA and whether the Union and Cushman & Wakefield intended for the terms of their agreement to survive after Cushman & Wakefield stopped working at the facility. Therefore, I deny the Union's motion for partial summary judgment as to whether Jones assumed the 2011 J.P. Morgan Chase CBA and adopted the Union's definition of the term.

## IV.  CONCLUSION

For the foregoing reasons, I deny both the Union's and Jones's motions for summary judgment.